# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ED (ITE) CHEN, | )<br>)<br>) |
| Plaintiff, | )<br>) Civil Case No. |
| v. | ) 17-cv-10596<br>) |
| THE HARTFORD INSURANCE CO., INC., and TWIN CITY FIRE INSURANCE CO., | )<br>)<br>) |
| Defendants. | )<br>)<br>) |

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS

SAYLOR, J.

This is a case relating to a claim for workers' compensation. Plaintiff Ed (Ite) Chen alleges that defendants Hartford Insurance Co., Inc. and Twin City Fire Insurance Company, sued as "Twin Cities Fires and Casualty Insurance Company,"[1] wrongfully failed to pay his workers' compensation claim; engaged in unfair and deceptive trade practices in violation of Mass. Gen. Laws ch. 93A; defamed him, allegedly in violation of Mass. Gen. Laws ch. 176D, § 3(3); and refused to conduct a reasonable investigation of his claims in violation of Mass. Gen. Laws ch. 176D, § 3(9)(d). Plaintiff is proceeding *pro se*. Because adjudication of plaintiff's claims in this Court is barred by the Massachusetts Workers' Compensation Act ("MWCA"), defendants' motion to dismiss will be granted.

---

[1] Defendants, in their motion to dismiss, contend that the proper name for this defendant is "Twin City Fire Insurance Company." (Def. Mem. in Supp. Mot. to Dismiss at 1 n.1).

## I. Background

### A. Factual Background

The complaint alleges that Ed (Ite) Chen was employed by Viceroy Chemical in 2013 as an analytical chemist. (Am. Compl. ¶¶ L, 4, 11). It alleges that he was exposed to toxic chemicals while working at a property in Fall River owned by Quantum Catalytic and operated by Continuum Energy Technologies, due to poor ventilation in his workspace. (*Id.* ¶¶ jdx.1, B, C, I, 10, 20).[2] It further alleges that Continuum employee Thomas Godfrey was in charge of safety but discouraged Chen from filing a claim or going to the hospital. (*Id.* ¶ A). And it alleges that Chen suffered various types of neurological, physical, and emotional damage as a result. (*Id.* ¶¶ 28, 33).

Defendants Hartford Insurance Co., Inc. and Twin City Fire Insurance Co. are insurance companies; Twin City is a subsidiary of Hartford. (Def. Mem. in Supp. Mot. to Dismiss at 1 n.1). According to the complaint, Quantum Catalytic, Continuum, and Viceroy were insured by Twin City. (Am. Compl. ¶¶ 5, 8, 20). A company called Transformative Energy Technologies Investments, LLC allegedly "introduced Chen to Continuum Energy Technology" and was insured by Hartford itself. (*Id.* ¶¶ 12-13).

The complaint admits that "Chen's personal injuries fall within the jurisdiction of workers comp," but alleges that "Chen is pressing his claim outside the workers compensation system after exhausting administrative avenues within the system for his workers comp claim." (Am. Compl. ¶¶ 20, 24). Another allegation suggests that Chen did not follow the administrative process to completion: "Chen exhausted all procedural avenues within department of industrial

---

[2] The amended complaint begins with a section titled "Jurisdiction" including paragraphs numbered 1-4. It then switches to lettered paragraphs A-M, and goes back to numbers 1-75. The first paragraphs 1-4 will be referred to as "¶¶ jdx.1, jdx.2," etc. and the remaining paragraphs will be referred to by their letters or numbers alone.

accidents as he was summarily denied advancement to the conference state by the conciliator, who failed to inform Chen of his right to appeal her decision until the appeal period lapsed." (Am. Compl. ¶ 27). And certain other allegations in the complaint suggest that Chen is choosing not to go forward under the workers' compensation scheme because he finds it inadequate. For example, the complaint alleges that Harford has an interest in denying Chen's workers' compensation claim because it also insured the parties allegedly responsible for Chen's injury—Quantum Catalytics and Continuum. (Am. Compl. ¶ 15). It further alleges that "[b]ecause the Hartford and their subsidiary the [T]win [C]ities [F]ire [I]nsurance [C]ompany omitted key medical information to the workers comp system and to their own lawyers, adjusters, and independent medical examiners, failed to conduct any investigation, and had conflicts of interest with respect to their other clients in attempting to deny Chen's claims, Chen cannot press his claim through the MGL 152 worker's comp system." (Am. Compl. ¶ 17). And it complains that "[t]he cozy relationship between the workers comp system, the lawyers in workers comp, the insurance companies with the lawyers, and lastly the high powered investor who partnered with Chen and purchases extensive insurance with the Hartford . . . merit a civil case outside the workers comp system makes it impossible [f]or Chen to receive a fair hearing within the worker's compensation system." (Am. Compl. ¶ 19).

The complaint further alleges that Hartford failed to investigate his claim and suppressed medical evidence that he submitted. (Am. Compl. ¶¶ 21, 51, 57-59). It alleges that Hartford only contacted one witness, (*id.* ¶ E, 52); that Hartford did not give the independent medical examiner any legible medical records, (*id.* ¶¶ 60-61, 65); that Hartford failed to give its lawyers copies of the letters written by the neurologist and toxicologist that Chen hired to document his injuries, (*id.* ¶¶ 56-59, 65); that it forced him to litigate to have his claim investigated, (*id.* ¶ 70);

3

and that it failed to give him a reasonable explanation for its denial of coverage, (*id.* ¶ 74).

Finally, the complaint alleges that two of Hartford's lawyers told the Massachusetts Department of Industrial Accidents ("DIA") conciliator that he was lying about his injuries, and "defamed Chen to the DIA conciliator by telling her Chen was the CEO of a company that had run out of cash and it was highly suspicious, despite the fact the [sic] after Chen made his claim, [V]iceroy Chemical continued to operate and raise money, and perform patent activity for another three years after Chen's injury, making blatantly false and misleading postulations despite contradictor[y] evidence which were known or should have been known to him." (Am. Compl. ¶¶ 34, 36, 43).

Chen seeks "a preliminary injunction for the Hartford to provide medical evaluation of [his] condition by appointing an independent neurologist, occupational therapist and toxicologist to evaluate the physical damage to Chen due to his exposure to gases which are banned by the Geneva protocol on gas warfare," monetary damages including $540,000—three years of the salary listed on his workers' compensation policy—and a lifetime loss of salary, treble damages under Chapter 93A, and at least $1.62 million in exemplary damages. (Am. Compl. ¶ 23, 29, 30, pp. 9-10).

### B. Procedural Background

Plaintiff filed this action on April 6, 2017. An amended complaint was deemed to be filed on August 4, 2017. (ECF 18). Defendants filed a motion to dismiss on September 1. Plaintiff filed his opposition on September 22, and defendants filed a reply on October 5. A motion hearing was held on October 11. Although plaintiff was provided with telephone dial-in information, he did not appear at the hearing either in person or by telephone.

Defendants have submitted detailed facts related to plaintiff's three administrative claims filed with the Massachusetts Department of Industrial Accidents ("DIA") and a prior state-court

4

action in New York. Because the Court concludes that it need not rely on any facts related to those proceedings, it expresses no opinion as to whether those facts are appropriately part of the record at this early stage.

## II. Standard of Review

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give . . . plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations and footnote omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if the facts as alleged do not "possess enough heft to sho[w] that [plaintiff is] entitled to relief." *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir.2008) (alterations in original) (quoting *Clark v. Boscher*, 514 F.3d 107, 112 (1st Cir. 2008)) (internal quotation marks omitted).

## III. Analysis

All of plaintiff's claims are barred because his sole remedy is through the Massachusetts Workers' Compensation Act ("MWCA"), Mass. Gen. Laws ch. 152.

It is undisputed that plaintiff was an employee of Viceroy Chemical, that his alleged reaction to a chemical exposure is a "personal injury" under the MWCA, and that it arose out of his employment. *See Green v. Wyman-Gordon Co.*, 422 Mass. 551, 558 (1996); (Am. Compl. ¶¶ 10-11, 20, 24). Plaintiff alleges that he has exhausted his administrative remedies; defendants

5

contend that he actually withdrew all three of his administrative claims. On a motion to dismiss, the Court must accept the plaintiff's allegations as true, but here the fact is immaterial: the MWCA does not require a plaintiff to exhaust his administrative remedies before filing a claim in federal district court—rather, it *completely bars* his right to sue. The statute provides: "An employee shall be held to have waived his right of action at common law or under the law of any other jurisdiction in respect to an injury that is compensable under this chapter, to recover damages for personal injuries, if he shall not have given his employer, at the time of his contract of hire, written notice that he claimed such right . . . ." Mass. Gen. Laws ch. 152, § 24; *see King v. Viscoloid Co.*, 219 Mass. 420, 422 (1914) ("It was undoubtedly the intention of the Legislature by [the MWCA] to take away from employees who should become subject to its provisions all other remedies that they had against their employers for injuries happening in the course of their employment and arising therefrom, and to substitute for such remedies the wider right of compensation given by the act."). Plaintiff does not allege that he has retained that right; to the contrary, the complaint acknowledges that his "personal injuries fall within the jurisdiction of workers comp." (Am. Compl. ¶ 24). And because the activity plaintiff complains of was undertaken by the defendant insurers acting "in the shoes of" plaintiff's employer to further the goals of the MWCA, the bar applies to suits against those insurers as well. *See Maxwell v. AIG Domestic Claims*, 460 Mass. 91, 107-09 (2011). Therefore, to the extent plaintiff is seeking compensation for his underlying injury, this Court is without any authority to award it.

Plaintiff's claims under Mass. Gen. Laws Chapters 93A and 176D, § 3 are also barred by the MWCA. As defendants point out, *Fleming v. National Union Fire Insurance. Co.*, 445 Mass. 381 (2005), is remarkably similar to this case. There, the plaintiffs sued their employer's workers' compensation insurer for allegedly violating Chapters 93A and 176D, § 3(9) in the

course of handling their claims. *Id.* at 382-83. The court held that "[n]otwithstanding the plaintiffs' contention that the defendants' actions in handling their workers' compensation claims constituted unfair or deceptive business practices, their cause of action is still fundamentally encompassed within the overarching workers' compensation framework." *Id.* at 383. It reviewed the "comprehensive statutory and regulatory scheme" surrounding workers' compensation claims, which includes not only an adjudicative process affording multiple levels of review for individual claims, but also an administrative process by which parties can complain about "questionable claims handling techniques." *Id.* at 384-85; *see* Mass. Gen. Laws ch. 23E, § 3; 452 C.M.R. § 7.04. The court concluded that "[i]n light of this comprehensive statutory and regulatory scheme that affords injured workers the opportunity to contest benefit determinations and payment practices, we conclude that employees . . .who believe that their employer or its insurer had engaged in questionable claims handling techniques[] have an avenue for obtaining redress with respect to alleged misconduct" and that "[g]iven the breadth of the workers' compensation framework, it is evident that the Legislature intended employees to seek relief for purported unfair or deceptive business practices in the workers' compensation realm through G.L. c. 152, and not by way of action pursuant to G.L. c. 93A." *Id.* at 385-86.

For the same reasons, plaintiff's claims under Chapters 93A and 176D, § 3 will be dismissed.[3]

---

[3] The claims under Chapters 93A and 176D suffer from a number of other defects. Among other things, the Chapter 93A claim should be dismissed because plaintiff failed to send an adequate demand letter describing the injury he suffered and giving defendants the required 30 days to respond. Mass. Gen. Laws ch. 93A, § 9(3); (Def. Reply Exs. 1 & 2); *see Rodi v. S. New England Sch. of Law*, 389 F.3d 5, 19 (1st Cir. 2004). The claim for defamation fails because there is no private cause of action under Chapter 176D, § 3(3). *See* Mass. Gen. Laws ch. 176D, § 6 (providing for enforcement by the Commissioner of Insurance); Mass. Gen. Laws ch. 23E, § 3(b)(8) (providing procedures by which complaints go to the Commissioner for enforcement); Mass. Gen. Laws ch. 93A, § 9(1) (providing a cause of action to those "whose rights are affected by another person violating the provisions of *clause (9)* of section three of chapter one hundred and seventy-six D" (emphasis added)). And that claim appears to be barred by the absolute litigation privilege, as the complained-of statements were made at a conciliation hearing. *Blanchette v. Cataldo*, 734 F.2d 869, 877 (1st Cir. 1984) ("Under Massachusetts law, an attorney's statements are

7

## IV. Conclusion

For the foregoing reasons, defendants' motion to dismiss is GRANTED.[4]

**So Ordered.**

                                                    /s/ F. Dennis Saylor
                                                    F. Dennis Saylor, IV

Dated: November 9, 2017                                       United States District Judge

---

absolutely privileged 'where such statements are made by an attorney engaged in his function as an attorney whether in the institution or conduct of litigation or in conferences and other communications preliminary to litigation.'" (quoting *Sriberg v. Raymond*, 370 Mass. 105, 109 (1976))); *Doe v. Nutter, McClennen & Fish*, 41 Mass. App. Ct. 137, 140 (1996).

[4] Plaintiff, in his complaint, requests that if the Court finds any of his claims to be barred by the MWCA, it should "remand to the administrative judge to adjudicate the way the Hartford handled the claims process in violation of subsection 14 of MGL chapter 152." (Am. Compl. at 9-10). But plaintiff has not alleged an underlying worker's compensation claim to remand, and in any event this Court is without power to direct any administrative law judge to take action with respect to a case not properly within its jurisdiction.